**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 26, 2021**

# In the Court of Appeals of Georgia

A20A1932. CITY OF SANDY SPRINGS v. CITY OF ATLANTA.

REESE, Presiding Judge.

The City of Sandy Springs sued the City of Atlanta, alleging violations of the Open Records Act[1] and the Service Delivery Strategy ("SDS") Act,[2] and seeking injunctive relief. The Superior Court of Fulton County dismissed Counts 2 and 3 of the second amended complaint, which alleged violations of the SDS Act, and denied Sandy Springs's motion to transfer venue. Sandy Springs appeals, arguing that the superior court erred in finding that Sandy Springs had to be a party to the current service delivery strategy in order to use OCGA § 36-70-28 (c), that the court erred in finding that Sandy Springs was required to engage in alternative dispute resolution

---

[1] See OCGA § 50-18-70 et seq.

[2] See OCGA § 36-70-20 et seq.

before using OCGA § 36-70-24, and that the court lacked jurisdiction. For the reasons set forth infra, we affirm.

Viewing as true all well-pleaded material allegations,[3] the second amended complaint (the "Complaint") alleged that in October 2005, a service delivery agreement designated the City of Atlanta as the direct retail water service provider for all of unincorporated Fulton County, which included the area that was later incorporated as the City of Sandy Springs in December 2005. Count 2 alleged that Atlanta maintained an outside city water rate that was 21 percent higher than the inside water rate, and that this rate differential was arbitrary, in violation of OCGA § 36-70-24 (2) (B).

Count 3 of the Complaint alleged that Atlanta's refusal to review and revise the water fees assessed to Sandy Springs customers violated the SDS Act, and that Sandy Springs was entitled to alternative dispute resolution under OCGA § 36-70-28 (c), and specifically that a judge outside the circuit initiate mandatory mediation pursuant to OCGA § 36-70-25.1 (d) (1). Sandy Springs filed a motion to transfer venue,

---

[3] See *Atlanta Metro Leasing v. City of Atlanta*, 353 Ga. App. 785, 786 (839 SE2d 278) (2020).

2

requesting transfer to an adjoining judicial circuit superior court pursuant to § 36-70-25.1 (d) (1) (A).

The superior court granted Atlanta's motion to dismiss Counts 2 and 3 and denied the motion to transfer venue. The court found that Count 2 was premature because no alternative dispute resolution had occurred, as required by OCGA § 36-70-24 (2) (B). The court dismissed Count 3 and denied the transfer motion because Sandy Springs admitted it was not a party to the current service delivery strategy, and therefore could not avail itself of the procedure set forth in OCGA § 36-70-28 (c). This appeal followed.

> In considering dismissal under OCGA § 9-11-12 (b) (6) [for failure to state a claim upon which relief can be granted], the trial court must accept as true all well-pled material allegations in the complaint and must resolve any doubts in favor of the plaintiff. This court reviews a trial court's ruling on a motion to dismiss de novo, viewing as true all well-pleaded material allegations in the complaint. However, we are under no obligation to adopt a party's legal conclusions based on these facts.[4]

---

[4] *Atlanta Metro Leasing*, 353 Ga. App. at 786 (citations and punctuation omitted).

With these guiding principles in mind, we turn now to the claims of error asserted by Sandy Springs.

1. Sandy Springs argues that the trial court erred by holding that Sandy Springs was required to be a party to the current service delivery strategy before it could utilize subsection (c) of OCGA § 36-70-28 ("Section 28"). In Count 3 of the Complaint, Sandy Springs alleged that it had requested that Atlanta review and revise its water fees pursuant to subsections (b) (2) and (b) (3) of Section 28.[5]

Under subsection (c) of Section 28, "[i]n the event that a county or an affected municipality located within the county refuses to review and revise, if necessary, a strategy in an accordance with paragraphs (2) and (3) of subsection (b)[,] then any of the parties may use the alternative dispute resolution and procedures set forth in [OCGA § 36-70-25.1 (d)]." "As used in [Section 28], the term 'affected municipality' means each municipality required to adopt a resolution approving the local

_____

[5] Under OCGA § 36-70-28 (b) (2) and (3), "[e]ach county and affected municipality shall review, and revise if necessary, the approved strategy: [w]henever necessary to change service delivery or revenue distribution arrangements; [or w]henever necessary due to changes in revenue distribution arrangements[.]"

government service delivery strategy pursuant to subsection (b) of Code Section 36-70-25."[6]

Viewing as true the well-pleaded material allegations in the Complaint, Section 28 does not apply to the parties' dispute. Sandy Springs was not incorporated until December 2005, and thus is not an "affected municipality" as it was not required to adopt a resolution approving the service delivery strategy because the strategy was already in place.[7]

Instead, the more specific statute, OCGA § 36-70-24 ("Section 24"), regarding water rate differentials, applies.[8] That section provides in relevant part:

> If a governing authority disputes the reasonableness of water and sewer rate differentials imposed within its jurisdiction by another governing authority, that disputing governing authority may hold a public hearing for the purpose of reviewing the rate differential. Following the preparation of a rate study by a qualified engineer, the governing authority may challenge the arbitrary rate differentials on behalf of its

---

[6] OCGA § 36-70-28 (a).

[7] See OCGA §§ 36-70-25 (b); 36-70-28 (a).

[8] See *Southstar Energy Svcs. v. Ellison*, 286 Ga. 709, 712 (1) (691 SE2d 203) (2010) ("For purposes of statutory interpretation, a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent.") (citation and punctuation omitted).

residents in a court of competent jurisdiction. Prior to such challenge, the dispute shall be submitted to some form of alternative dispute resolution[.][9]

Thus, under the plain language of Section 24,[10] in order to engage in a dispute regarding water rates, a governing authority must conduct a public hearing, secure a rate study, and participate in some form of alternative dispute resolution. The trial court did not err in finding that Sandy Springs was not entitled to avail itself of the procedure set forth in Section 28 (c).

2. Sandy Springs contends that the trial court erred in finding that the lawsuit was premature under Section 24, and did not address Sandy Springs's argument that it could use mandatory mediation under OCGA § 36-70-25.1 (d) to satisfy Section 24's requirement that the dispute be submitted to "'some form' of alternative dispute resolution[.]"

---

[9] OCGA § 36-70-24 (2) (B).

[10] See *Minnix v. Dept. of Transp.*, 272 Ga. 566, 571 (3) (533 SE2d 75) (2000) ("Where . . . the language of a statute is plain on its face, judicial construction is not only unnecessary, but is forbidden.").

6

As with Section 28,[11] OCGA § 36-70-25.1 (a) defines the term "affected municipality."[12] Thus, under the plain language[13] of OCGA § 36-70-25.1, and for the same reasons set forth in Division 1, Sandy Springs is not an affected municipality, and this section's dispute resolution procedures do not apply to the water rate differential dispute between Atlanta and Sandy Springs.[14]

3. Sandy Springs argues that the trial court lacked jurisdiction and should have transferred the case pursuant to the mandate contained in OCGA § 36-70-25.1 (d) (1) (A).

---

[11] See Division 1, supra, discussing OCGA § 36-70-28 (a).

[12] See OCGA §§ 36-70-25.1 (a) ("As used in this Code section, the term 'affected municipality' means each municipality required to adopt a resolution approving the local government service delivery strategy pursuant to subsection (b) of Code Section 36-70-25."); 36-70-25 (b) ("The county and each municipality within the county shall participate in the development of the [service delivery] strategy. Approval of the strategy shall be accomplished by adoption of a resolution[.]").

[13] See *Minnix*, 272 Ga. at 571 (3).

[14] See OCGA § 36-70-25.1 (b) ("If a county and the affected municipalities in the county do not reach an agreement on a service delivery strategy, the provisions of this Code Section shall be followed as the process to resolve the dispute.")

7

As discussed above, because Sandy Springs is not an "affected municipality[,]"

OCGA § 36-70-25.1 (d) (1)[15] does not apply.

*Judgment affirmed. Markle and Colvin, JJ., concur*.

---

[15] OCGA § 36-70-25.1 (d) provides in relevant part: "In the event that the county and the affected municipalities in the county fail to reach an agreement after the imposition of sanctions provided in Code Section 36-70-27, then the following process is available to the parties: (1) (A) The county or any affected municipality located within the county may file a petition in superior court of the county seeking mandatory mediation. Such petition shall be assigned to a judge, pursuant to Code Section 15-1-9.1 or 15-6-13, who is not a judge in the circuit in which the county is located. The judge selected may also be a senior judge pursuant to Code Section 15-1-9.2 who resides in another circuit."